

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-14-00127-CR

---

JAMES PAT WHEAT, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 52nd District Court
Coryell County, Texas
Trial Court No. FISC-09-20003, Honorable Trent D. Farrell, Presiding

---

April 14, 2016

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant James Pat Wheat appeals[1] his conviction of the offense of aggravated sexual assault of a child under the age of 14[2] and the resulting sentence of seventy-five years of imprisonment. Through one issue, he contends his trial counsel was wholly ineffective, warranting a new trial. We disagree, and will affirm.

---

[1] Appellant requested and was granted an out-of-time appeal by the Texas Court of Criminal Appeals.

[2] TEX. PENAL CODE ANN. § 22.021 (West 2015).

Background

Appellant does not challenge the sufficiency of the evidence to support his conviction. We will therefore relate only those facts necessary to disposition of his appellate issue.

The indictment alleged appellant intentionally and knowingly penetrated, with his finger, the female sexual organ of "NET," a child younger than 14 and not his spouse. At the outset of the case, the court appointed an attorney to represent appellant. At docket call before trial, the appointed attorney informed the court appellant had retained attorney Ted Potter to represent him. The court granted appointed counsel's motion to withdraw, and ten days later, trial began. Potter participated in jury selection and examination of witnesses but became ill and was briefly hospitalized just before final arguments in the guilt-innocence phase. At that time, the court granted a continuance until the following morning. Potter appeared in court the next morning for final argument and participated in the punishment phase of trial.[3]

The State's evidence showed the complainant NET[4] was four years old at the time of the offense. She was five at the time of trial and was not called to testify; the State's case was presented through the child's mother, a sexual assault nurse examiner and a counselor. NET's mother testified she was taking a shower with NET when the

---

[3] On appeal, appellant notes Potter resigned his license to practice law several months after trial and had previously received a public reprimand.

[4] The jury was made aware of the complainant's actual name, but on appeal the parties have properly used the fictional name "NET" to protect her identity. We will do the same. *Cf.* TEX. R. APP. P. 9.8; 9.10.

child said her "privates" hurt and that "Papa" had hurt her by putting his fingers inside her privates. "Papa" was identified as appellant, the husband of the child's caregiver. When NET's mother saw the child's genital area appeared red, she took her to the hospital.[5]

The defense called no witnesses during the guilt-innocence phase of trial. Potter called three witnesses during the punishment phase. Appellant's wife told the jury she believed NET was lying and asked the jury to give appellant the minimum term of imprisonment. Two pastors testified as positive character witnesses. In his argument, Potter asked the jury to consider rehabilitation, the minimum term of confinement and the best interests of society. The jury returned a sentence of seventy-five years and a ten-thousand-dollar fine.

Analysis

In his sole issue on appeal, appellant contends his retained counsel, Potter, entirely failed to provide meaningful adversarial testing of the State's case. Accordingly, he strenuously argues, the holding of *United States v. Cronic,* 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984), is applicable to the case.

---

[5] NET was examined by a sexual assault nurse examiner on two occasions, once shortly after her outcry and again the following month. One of the nurses testified "NET actually placed her finger beyond the labia majora and moved it back and forth" to demonstrate appellant's actions. The nurse found redness to NET's genitalia and testified her observations were consistent with NET's report. The nurse's reports were admitted into evidence. NET's counselor also testified at trial. She described NET's inappropriate sexual behavior and play. She also testified NET told her "Papa touched my privates."

The Supreme Court issued its opinions in *Cronic*, 466 U.S. 648, and *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), on the same day. *See Bell v. Cone*, 535 U.S. 685, 695-97,122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (contrasting *Strickland* standard for Sixth Amendment violations with *Cronic* standard). *See also Florida v. Nixon*, 543 U.S. 175, 190, 160 L. Ed. 2d 565, 125 S. Ct. 551 (2004) (explaining *Cronic*'s "narrow exception to *Strickland*'s holding" that defendant asserting ineffective assistance of counsel must demonstrate both deficient performance and prejudice). "*Cronic* instructed that a presumption of prejudice would be in order in 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" *Nixon*, 543 U.S. at 190 (quoting *Cronic*, 466 U.S. at 658). *See also Strickland*, 466 U.S. at 692 ("In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice").

One of the circumstances the Court identified as proper for a presumption of prejudice is present if counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. The Court noted that it required "[n]o specific showing of prejudice in *Davis v. Alaska*, 415 U.S. 308 (1974), because the petitioner had been 'denied the right of effective cross-examination' which 'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.'" *Cronic*, 466 U.S. at 659 (quoting *Davis*, 415 U.S. at 318); *see also Nixon*, 543 U.S. at 190-91 (further discussing *Cronic* standard); *Bell*, 535 U.S. at

4

696-97 (under *Cronic*, attorney's failure to test the prosecution's case must be "complete").[6]

The Court of Criminal Appeals has applied *Cronic* in two cases. In *Ex parte McFarland*, 163 S.W.3d 743 (Tex. Crim. App. 2005), a habeas corpus proceeding after the applicant's capital murder death sentence was affirmed on appeal, the court rejected the applicant's claim he was actually or constructively denied counsel. The court held that his retained counsel's scant trial preparation and his habit of napping during trial did not leave the applicant without counsel because his appointed co-counsel provided the required adversarial testing of the prosecution's case. *Id.* at 754-55.

In the second case, the court agreed the defendant was constructively denied his right to effective assistance of counsel in his prosecution for misdemeanor driving while intoxicated. *Cannon v. State*, 252 S.W.3d 342 (Tex. Crim. App. 2008). Defense counsel in that case moved, at the start of voir dire, for a continuance and for recusal of the trial judge. When those motions were denied, counsel told the court he was not ready for trial, would be unable to effectively represent the defendant and could therefore not participate in the trial. He thereafter declined to participate in jury selection, to enter a plea for the defendant, to make opening or closing jury argument, to cross-examine any

---

[6] *Cronic* identified two other situations in which the presumption of prejudice is proper, the first being the "complete denial of counsel." 466 U.S. at 659 and n.25 ("The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."). *See also Burdine v. Johnson*, 262 F.3d 336, 345 (5th Cir. 2001) (en banc) (applying *Cronic* where counsel slept during parts of State's case in capital murder trial). Secondly, the Court said no showing of prejudice is required in cases like *Powell v. Alabama*, 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158 (1932). 466 U.S. at 659-62. Appellant does not contend either of those situations is present here.

of the State's witnesses, to make any objections, to offer any defense, to request special jury instructions and to offer any evidence or argument on punishment. *Id.* at 350.

Noting that defense counsel did move for an instructed verdict and did bring a sentencing mistake to the trial court's attention, the court nonetheless held he was constructively denied counsel because his lawyer "effectively boycotted the trial proceedings and entirely failed to subject the prosecution's case to meaningful adversarial testing." *Id.* By refusing to participate, the court further held, defense counsel abandoned his role as advocate and caused the trial to lose its character as a confrontation between adversaries. Under those circumstances, the court presumed the defendant was prejudiced. *Id.*

*Bell v. Cone*, 535 U.S. 685, involved a claim the defendant's counsel entirely failed to subject the prosecution's claim to meaningful adversarial testing. 535 U.S. at 696. The Supreme Court disagreed, pointing out the defendant argued "not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, this difference is not of degree but of kind." *Id.* at 697. The Court noted that the defendant pointed to his counsel's failure to adduce mitigating evidence and his waiver of closing argument, and stated such complaints "are plainly of the same ilk as other specific attorney errors we have held subject to *Strickland*'s performance and prejudice components." *Id.* at 697-98.

6

As the State points out here, Potter conducted voir dire, successfully challenged a member of the venire for cause, cross-examined the State's witnesses, presented oral argument, questioned the credibility of State witnesses, and made several motions and objections during the guilt-innocence phase of trial. During the punishment phase, he engaged in a voir dire examination of a State's witness and objected to her proffered testimony. As noted, he also called three defense witnesses and argued for a minimum term of confinement and for rehabilitation. Appellant raises complaints concerning Potter's performance of several of those trial functions. But after review of the record, we find appellant's complaints of Potter's representation involve specific instances of assertedly ineffective assistance rather than a complete failure to test the State's case. His complaints, like those in *Bell*, are of the same ilk as those commonly raised in cases applying *Strickland*. 535 U.S. at 697-98. Potter's conduct at trial does not approach the effective boycott of trial proceedings the court found in *Cannon*. 252 S.W.3d at 350; *see also Childress v. Johnson*, 103 F.3d 1221, 1229-30 (5th Cir. 1997) (noting that court has "consistently distinguished shoddy representation from no defense at all"). Nor does the record support a contention Potter was, as appellant's counsel, merely "inert." *See McFarland*, 163 S.W.3d at 752 (referring to "inert" lawyer who fails to provide any meaningful assistance) (citing *Gochicoa v. Johnson*, 238 F.3d 278, 284-85 (5th Cir. 2000) (stating *Cronic*'s constructive denial of counsel requires demonstration counsel "was not merely incompetent but inert"). Accordingly, we decline to apply *Cronic* here.

Because appellant relies on appeal on the application of *Cronic*, his brief does not analyze his ineffective assistance of counsel claims under the standard set out in

*Strickland,* 466 U.S. 668. In the interest of justice, however, we have considered his claims under that standard.

To prevail on his ineffective assistance claims under *Strickland*, appellant must satisfy both prongs of its test. First, he must prove that his counsel's conduct was objectively deficient. *Ex parte Nailor,* 149 S.W.3d 125 (Tex. Crim. App. 2004). To assess such a contention, we determine whether counsel was acting as "a reasonably competent attorney" would under the circumstances. *Strickland,* 466 U.S. at 687. Appellant has the burden of proof and must overcome a "strong presumption that counsel's performance fell within the wide range of reasonable professional assistance." *Id.* at 689. This highly deferential review is employed to avoid "the distorting effect of hindsight." *Id.* Thus, applicant must show that his attorney made "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

Second, even if appellant can demonstrate his counsel's actions were objectively deficient, he must still prove that the deficient performance prejudiced his defense. *Id.* He must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court has defined this "reasonable probability" as a "probability sufficient to undermine confidence in the outcome." *Id; Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). Absent some effect of the challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated. *Cronic,* 466 U.S. at 656.

An accused is entitled to reasonably effective assistance of counsel. *King v. State,* 649 S.W.2d 42, 44 (Tex. Crim. App. 1983). But reasonably effective assistance of counsel does not mean error-free representation. *Ex parte Felton,* 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective. *Wert v. State,* 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Therefore, when evaluating a claim of ineffective assistance, the appellate court looks to the totality of the representation and the particular circumstances of the case without the benefit of hindsight. *Lopez v. State,* 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *Thompson v. State,* 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

As noted, there is a strong presumption that trial counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *Salinas v. State,* 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). It is not sufficient that an appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. *Lopez,* 343 S.W.3d at 143. Instead, in order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record and the court must not engage in retrospective speculation. *Id.* at 142. When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined. *Id.* at 143.

Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Absent specific explanations for counsel's decisions, a record on

9

direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). It is a rare case in which trial counsel's ineffectiveness is apparent from the record, allowing an appellate court to address and dispose of the claim on direct appeal. *Lopez,* 343 S.W.3d at 143. In *Lopez,* the court noted that it is a "difficult hurdle to overcome: the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id.* In other words, when trial counsel has not had an opportunity to explain his or her actions or inactions, an appellate court cannot find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Appellant's complaint of Potter's trial representation includes contentions his voir dire was excessively brief and thus ineffective; that he failed to make an opening statement; and that in his failure to question NET's mother adequately about the child's outcry and his questioning her in a way to reveal extraneous offense evidence, Potter effectively was "jump[ing] to the State's side." Appellant also attacks Potter's cross-examination of the nurse who examined NET, arguing his questions reaffirmed the manner and means of the offense, and questions Potter's failure to cross-examine NET's counselor. Appellant points out Potter invoked "the Rule"[7] but, for reasons unclear, appellant's wife remained in the courtroom and her testimony was precluded. Appellant contends Potter abandoned him during closing argument because it was

---

[7] TEX. R. EVID. 614.

10

short, "full of holes," and failed to fully set forth viable defensive theories. Finally, appellant contends Potter failed to meaningfully represent him during the punishment phase, presenting an ineffective closing argument.

As noted, our review must consider the totality of Potter's representation and the particular circumstances of appellant's case. We keep in mind that a showing, with the benefit of hindsight, that counsel's actions or omissions during trial were merely of questionable competence is not sufficient to demonstrate his representation was outside the wide range of reasonable professional assistance. *See Lopez,* 343 S.W.3d at 143. Many of appellant's complaints are of matters well within reasonable trial strategy. *See, e.g., Goodspeed,* 187 S.W.3d at 391-93 (voir dire); *McFarland,* 163 S.W.3d at 756 (cross-examination); *Taylor v. State,* 947 S.W.2d 698, 704 (Tex. App.—Fort Worth 1997, pet. ref'd) (argument); *Standerford v. State,* 928 S.W.2d 688, 697 (Tex. App.—Fort Worth 1996, no pet.) (opening statement). And, considered as a whole, we find the record does not demonstrate affirmatively that Potter's performance at trial involved conduct so outrageous no competent attorney would have engaged in it. *See Goodspeed,* 187 S.W.3d at 392; *Bone*, 77 S.W.3d at 833. Moreover, even were we to conclude the record satisfies the first element of the *Strickland* test, the second element has not been established. No contention is developed on appeal that the result of the proceeding would have been different but for Potter's asserted errors. *Strickland,* 466 U.S. at 694.

11

For these reasons, we overrule appellant's sole issue on appeal and affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.